## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Case No. 23-31905 |
| Christopher Justin Risher, | Chapter 13 |
| Debtor. | |

## MEMORANDUM AND ORDER

Before the court is a motion by Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Seasoned Credit Risk Transfer Trust, Series 2019-1 (the "Creditor"), seeking relief from the automatic stay (the "Motion"). The court stated at the conclusion of the hearing held on February 4, 2026, that the Motion would be denied. The court now enters this memorandum and order denying the Motion.

## BACKGROUND

Christopher Justin Risher (the "Debtor"), *pro se*, filed this chapter 13 bankruptcy case on September 15, 2023. Upon the filing of the case, the automatic stay was imposed by 11 U.S.C. § 362(a). The Debtor filed a modified chapter 13 plan [Doc 37] (the "Plan") on July 18, 2024, and the Plan was confirmed on August 16, 2024 [Doc 38]. The Plan, as set forth in the order confirming the Plan, provides the Trustee will pay the pre-petition arrearage owing to the Creditor, and the Debtor will make post-petition mortgage payments directly to the Creditor.

The Motion seeks relief from the automatic stay to allow the Creditor to pursue its state law rights with respect to the Debtor's homestead (the "Property"). At the time of the filing of the Motion, the Creditor stated that the amount of the post-petition default was $3,786.90 as a result of three missed monthly payments of $1,262.30. The total balance owed to the Creditor under the loan was $83,380.76. The Creditor also stated that the Property was valued at $326,700.00, adopting the Debtor's valuation from the schedules, while noting the taxable valuation was $342,300.00.

At the request, or with the consent of Creditor's counsel, the hearing on the Motion was continued numerous times to allow the Creditor to supplement the Motion and to allow for a consensual resolution.

At the hearing held on January 7, 2026, the Chapter 13 Trustee advised the court that the Debtor was current on Plan payments. Also during the hearing, Creditor's counsel confirmed that the Debtor had been making payments to the Creditor after the filing of the Motion, but in an amount insufficient to cure the full post-petition default. Specifically, Creditor's counsel informed the court that the defaulted payments had been reduced from three to two and the default amount reduced to about $2,200. At the time of the hearing, the Debtor's last payment was on December 19, 2025. The court continued the hearing to February 4, 2026.

During the hearing on February 4, 2026, Creditor's counsel advised the court that there was still no consensual resolution and counsel had no knowledge of any recent payments, because there was no updated payment history since the prior hearing. The Debtor did not appear at this or prior hearings on the Motion, or file an objection.[1] The facts are undisputed.

## DISCUSSION

### Statutory Authority to Lift the Stay

Bankruptcy Code 11 U.S.C. § 362(d) governs relief from the automatic stay. It states in relevant part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
  (1) *for cause*, including the lack of adequate protection of an interest in property of such party in interest; [or]
  (2) With respect to a stay of an act against property under subsection (a) of this section, if –
    (A) the debtor does not have an equity in such property; and
    (B) such property is not necessary to an effective reorganization.

*Id*. (emphasis added)

---

[1] The failure to appear or contest a motion or other request for relief does not mean that the requested relief is automatically granted. The Creditor must still make the "initial showing of 'cause.'" *In re St. Pierre*, 295 B.R. 692, 695 (Bankr. D. Conn. 2003). While the lack of objection was not argued by the Creditor, the court does not act as a rubber stamp for uncontested matters. *See Canada v. Union Elec. Co.*, 135 F.3d 1211, 1213 (8th Cir. 1997). *See also In re Franklin*, 210 B.R. 560, 562–63 (Bankr. N.D. Ill. 1997) ("[c]ritical review of uncontested motions, moreover, is consistent with a basic legal principle . . . courts are not required to grant a request for relief simply because the request is unopposed.").

Pursuant to 11 U.S.C. § 362(d) the court can grant relief from the stay for "cause" or if the debtor's property does not have equity and the debtor's property is not necessary for an effective reorganization. *In re Martens*, 331 B.R. 395, 398 (8th Cir. B.A.P. 2005) ("The statutory grounds for granting relief from the automatic stay are in the disjunctive"). The lack of adequate protection is but one example of "cause." *See In re Lilyerd*, 49 B.R. 109, 116 (Bankr. D. Minn. 1985). *See also generally In re Gauvin*¸ 24 B.R. 578, 580 (9th Cir. B.A.P. 1982).

"The burden of proof on a motion to lift or modify the automatic stay is a shifting one . . . if . . . the movant is able to make an initial showing of 'cause,' the burden then shifts to the debtor to demonstrate entitlement to the protection of the stay; the risk of nonpersuasion is on the debtor." *St. Pierre*, 295 B.R. at 695 (internal citations omitted in original). *See also* 11 U.S.C. § 362(g).

The Motion was brought under 11 U.S.C. § 362(d)(1). Relief was not sought under § 362(d)(2). This may be because the provisions of §362(d)(2) are more "clear cut" than under § 362(d)(1) and given the facts here, there is no credible argument that § 362(d)(2) would afford relief for the Creditor. 11 U.S.C. § 362(d)(2) has two requirements for relief to be granted: there is no equity in the property, and the property is not necessary for an effective reorganization. There is no dispute that there is significant equity in the Property.

There is also no dispute that the Property is necessary for an effective reorganization. For property to be necessary for an effective reorganization, the property must be "essential for an effective reorganization that is in prospect." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375–76 (1988). The Supreme Court continued stating that "this means . . . that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *Id*. at 376. "A debtor's principal residence in a Chapter 13 case is virtually always necessary to an effective reorganization." *In re Elmore*, 94 B.R. 670, 677 (Bankr. C.D. Cal). "Confirmation of a plan basically eliminates any argument that relief is appropriate under § 362(d)(2)." *In re Matthews*, 229 B.R. 324, 328 (Bankr. E.D. Pa. 1999). *See also e.g., In re Kadlubek Family Revocable Living Trust*, 545 B.R. 660, 665–67 (Bankr. D. N.M. 2016); *In re White Plains Dev. Corp*, 140 B.R. 948, 950 (Bankr. S.D. N.Y. 1992); *In re Ford*, 522 B.R. 829, 839–40 (Bankr. D. S.C. 2014). *But see, In re Lopez*, 446 B.R. 12, 20 n.42 (Bankr. D. Mass. 2011) (*citing In re Huggins*, 357 B.R. 180, 185 (Bankr. D. Mass. 2006)).

### "Cause" in general under 11 U.S.C. § 362(d)(1)

"'Cause' as used in § 362(d)(1) has no clear and limited definition and, therefore, is determined on a case-by-case basis. 'Cause' is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations." *In re Texas State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995) (internal citations omitted).

A decision to lift the automatic stay is within the discretion of the bankruptcy court. *Small Bus. Admin. v. Rinehart*, 887 F.2d 165, 169 (8th Cir. 1989). There is no clear definition of what constitutes "cause", so discretionary relief from the stay must be determined on a case-by-case basis. *Id*. (*citing In re Mac Donald*, 755 F.2d 715, 716 (9th Cir. 1985)). A determination of "cause" should also be based on the totality of the circumstances in each particular case. *In re Wilson*, 116 F.3d 87, 90 (3rd Cir. 1997). "Where a creditor is adequately protected by a large equity cushion, the debtor would suffer a substantial loss in the event of foreclosure, and no economic harm to the creditor would result, relief from stay should not automatically follow a default in payment." *Id*. (*citing In re McCollum*, 76 B.R. 797, 799 (Bankr. D. Ore. 1987)). *See also In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008). If a default under a plan is "not found to be material, relief from the automatic stay is not ordinarily warranted." *In re Dumbuya*, 428 B.R. 410, 417 (Bankr. N.D. Ohio 2009) (*citing In re Matthews*, 229 B.R. 324, 328 (Bankr. E.D. Pa. 1999)).

In addition, "[g]enerally, before modifying or lifting a stay, a court should first weigh the equities by conducting a fact-specific analysis of the circumstances surrounding the default." *Americredit Fin. Servs. v. Nichols* (*In re Nichols*), 440 F.3d 850, 856 (6th Cir. 2006) (*citing In re Mendoza*, 111 F.3d 1264, 1271 (5th Cir. 1997)). That same case continued "the failure to make payments, standing alone, however, does not usually constitute 'cause' to modify or lift the stay, especially where failure to pay resulted from circumstances beyond the debtor's control, such as illness or job loss. When there is still equity in the collateral, courts are not inclined to lift the stay." *Nichols*, 440 F.3d at 856. *See also In re Mathews*, 208 B.R. 506, 511 n.6 (Bankr. N.D. Ala. 1997) (listing cases holding that where there was equity in the collateral, the stay was not lifted or modified, despite missed payments after confirmation); *In re Raymond*, 99 B.R. 819, 822 (Bankr. S.D. Ohio 1989).

### "Cause" in this case under 11 U.S.C. § 362(d)(1)

The Creditor seeks relief and a determination of cause based on the Debtor's failure to make three post-petition payments as provided under the Plan. The Creditor argues that "[a] Debtor's failure to make plan payments and comply with the terms of a [p]lan is grounds for a bankruptcy court to grant relief from the automatic stay 'for cause.'" *See* Motion at p. 11 (*citing Reinbold v. Dewey County Bank*, 942 F.2d 1304, 1306–07 (8th Cir. 1991)). The Creditor's reliance on *Reinbold* is misplaced and it is mischaracterized by the above quoted argument. *Reinbold* provides that *failure to comply with a chapter 12 plan* supports the granting of a relief from stay but there is no discussion of a *failure to make plan payments*. *See Reinbold*, 942 F.2d at 1306–07. The debtor's failure in *Reinbold* was the failure to properly surrender collateral. *See In re Reinbold*, 110 B.R. 442, 443 (Bankr. D. S.D. 1990). The bankruptcy court found that the debtor committed fraud pre-petition when he sold collateral without authorization and post-petition when the debtor turned over to his creditor, in violation of an agreement "as part of his chapter 12 plan", older and less valuable equipment than the equipment subject to the lien of the creditor. *See generally Reinbold v. Dewey County Bank*, 942 F.2d at 1306; *In re Reinbold*, 110 B.R. at 443–46. The court, based on this fraud, granted the request of the creditor to convert the case to chapter 7 and while noting that "justice delayed is justice denied" granted the pending relief from stay to "expedite the recovery of its collateral." *In re Reinbold*, 110 B.R. at 446. There is no discussion of a lack of payments in either the lower court or appellate decision. There is also no evidence, let alone an assertion, that the Debtor in the instant case engaged in fraud or bad faith.

*Reinbold* focused solely on fraud and noncompliance with a surrender provision in a plan; there is no discussion of any failure to make plan payments. *Reinbold* cites to the *Wieseler* case for the statement that "debtor's failure to comply with *stipulation* provided cause for dissolving automatic stay". *Reinbold*, 942 F.2d at 1307 (*citing In re Wieseler*, 934 F.2d 965, 967 (8th Cir. 1991)) (emphasis added). The debtor in *Wieseler* failed to comply with a payment schedule pursuant to a stipulation and not pursuant to a plan. *In re Wieseler*, 934 F.2d 965, 967 (8th Cir. 1991). The *Reinbold* decision does not support the Creditor's arguments that the failure to make plan payments in the instant case is cause to grant relief from the automatic stay. Unlike the instant case, the debtor and creditor in *Wieseler* entered into a stipulation and the debtor defaulted on the stipulation. This reliance on a default under a stipulation rather than under a

plan is significant, and especially in the *Wieseler* case. The stipulation in *Wieseler* expressly provides for the lifting of the stay upon default.[2] In contrast, the Plan does not have any similar provision. The Plan is silent on the effect of or remedy upon any default, let alone having a provision that "[the Creditor] could apply to the bankruptcy court for an order granting relief from the statutory bankruptcy stay…." *Wieseler*, 934 F.2d at 966.

The Creditor also relies on the quote "[a]lthough forfeitures are highly disfavored, they are often a necessity where, as here, debtors are clearly unable or unwilling to pay their debts." *Id*. at 967. Unlike the *Wieseler* case, there is nothing in the record here to suggest that the Debtor is unable or unwilling to pay his debts; rather, the Debtor has been current on his chapter 13 Plan payments, the Debtor is making payments to the Creditor, and the Debtor has reduced the amount of the default.

The only other relevant case asserted by the Creditor in support of the Motion is *In re Martens*, 331 B.R. 395 (8th Cir. B.A.P. 2005).[3] The Creditor relies on the *Martens* case for the proposition that "cause" is defined as "any reason whereby a creditor is receiving less than his bargain from a debtor and is without a remedy because of the bankruptcy proceeding." *Id.* at 398 (internal quotations omitted).[4] The Creditor, however, ignores the following sentence which provides that "[a] creditor is entitled to relief from the automatic stay if the debtor is not making mortgage payments, *and* if there is insufficient equity in the property to adequately protect the creditor." *Id*. (emphasis added).

*Martens* does not support the Creditor's position that "cause" exists when the debtor fails to make *any* mortgage payments. Cause was found to exist in *Martens* based on the debtor's admitted failure to make any payments for at least six months and lack of equity in the property. *Martens*, 331 B.R. at 396, 398. Here, the Debtor has missed at most, three and perhaps only two

---

[2] This is a typical provision in an agreed order resolving a plan payment default.

[3] The Motion relied on other cases which assert facts not at issue in the instant case: *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc. Ltd.,* 484 U.S. 365, 370 (1988) (lack of adequate protection where collateral is depreciating in value); *In re Biltwood Properties, LLC,* 473 B.R. 70 (Bankr. M.D. Pa. 2012) (the failure to comply with certain obligations could serve as cause to grant relief from the stay including the failure to pay real estate taxes resulting in a superior tax lien; *In re Harwood Hideout, Inc.*, 2005 WL 894828 (Bankr. D. N.D. Mar. 4, 2005) (the failure to comply with certain other obligations could serve as cause to grant relief from the stay including the failure to provide proof of insurance and failing to cure tax deficiencies).

[4] The court disagrees that the Creditor is without a remedy. Pursuant to 11 U.S.C. § 1307(c)(6), a creditor could file to dismiss or convert the case for material defaults of plan terms.

monthly mortgage payments and the collateral is worth approximately four times the amount of the debt.

It appears the Creditor, like this court, was unable to find precedent or authority to support a determination of cause in this case. There is a case which found cause where there were less than four missed payments, but in that case, unlike here, there was no equity in the property. Moreover, given the lack of equity, the court concluded additional defaults would create additional harm to the creditor. *See In re Lopez*, 446 B.R. 12, 20 (Bankr. D. Mass. 2011). In the instant case, given the significant amount of equity, the Creditor will not suffer such harm. The court found other cases determining cause where there are missed payments but they also do not support a determination of cause in this case.[5]

In contrast, in the case of *In re Elmore*, 94 B.R. 670, 671 (Bankr. C.D. Cal. 1988) stay relief was denied, notwithstanding an eighteen-month default in monthly mortgage payments under a confirmed plan. The court found that the movant in that case was adequately protected because it was oversecured and that there was no suggestion that the property at issue was declining or depreciating in value. *Id*. at 677. Separately the court in *Elmore* stated that the failure to make eighteen regular monthly plan payments may be sufficient to grant the movant relief from the automatic stay, but the court did not grant relief from the stay on this ground because the creditor did "not base its motion for relief from stay on these grounds." *Id*. at 678.

Importantly, the issue of equity in property may not be determinative by itself, but it is often considered in determining the existence of cause. Defaulted payments may support a determination of cause but an equity cushion can, and does here, offset the payment defaults. ". . . [W]here there is a substantial equity cushion, the single fact that a debtor has missed one or more payments is not cause *per se* for relief from the automatic stay." *In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008). *See also In re Zeoli*, 249 B.R. 61, 63 (Bankr. S.D.N.Y. 2000) ("[W]here the value of the collateral substantially exceeds the secured creditor's claim, a debtor's breach of his financial obligation alone may not constitute 'cause' because the equity

---

[5] *See, e.g., In re Taylor*, 151 B.R. 646, 647–48 (E.D.N.Y. 1993) (five-month default); *In re Tainan*, 48 B.R. 250 (Bankr. E.D. Pa. 1985) (five-month default); *In re Davis*, 64 B.R. 358, 359–60 (Bankr. S.D.N.Y. 1986) (five or six-month default); *In re Ellis*, 60 B.R. 432, 435 (B.A.P. 9th Cir. 1985) (seven-month default). *See also First Fed. Sav. and Loan Ass'n of Minneapolis v. Whitebread*, 18 B.R. 192 (Bankr. D. Minn. 1982) (seven-month default); *In re Frascatore*, 33 B.R. 687 (Bankr. E.D. Pa. 1983) (seven-month default); *In re Borm*, 508 B.R. 104, 105 (8th Cir. B.A.P. 2014) (fifteen-month default); *In re Video East, Inc.*, 41 B.R. 176 (Bankr. E.D. Pa. 1984) (no default amount given); *In re Gellert*, 55 B.R. 970 (Bankr. D.N.H. 1985) (no amount clearly given, but roughly twelve months).

cushion in the collateral may provide the secured creditor with adequate protection."); *In re Elmira Litho, Inc.*, 174 B.R. 892, 904 (Bankr. S.D.N.Y. 1994) ("It is beyond cavil that an equity cushion can, under certain circumstances, serve as a form of adequate protection.").

Although not cited by the Creditor, the case of *In re Borm*, 508 B.R. 104 (8th Cir. B.A.P. 2014) is frequently cited in support of motions to lift the stay and a determination of cause. In *Borm*, there was an equity cushion but the debtors had missed fifteen post-petition mortgage payments. *Id.* at 105. The bankruptcy court denied the motion in *Borm* due to equity in the property and a concern that the creditor had misrepresented the status of payments made during the case. *Id.* The Bankruptcy Appellate Panel, reversing the bankruptcy court, focused on the fact that the debtors had missed fifteen payments, making the equity in the debtors' property irrelevant because "the debtors had missed such a significant number and amount of payments." *Id*. at *106.* Here, the Debtor has missed, at most, three payments. The additional fact of equity is another strike against determining cause and is consistent with *Borm*.

## CONCLUSION

Cause does not exist in a vacuum. There is no per se rule that the lack of plan payments, without more, is cause to lift the stay. The "more" may take many forms, including: the existence of fraud; a default in a stipulation; inability or unwillingness to make plan payments; a significant amount of plan payment defaults; and the lack of equity. Accordingly, the determination of whether there is cause requires the ability of a court to review these cases on a case-by-case basis with significant discretion provided to the court. There is no bright line to determine whether cause exits to lift the stay. Here, it is clear, the lack of at most three plan payments coupled with significant equity, is not cause to lift the stay.

The Creditor has not met its required and initial burden of proof to show cause under 11 U.S.C. § 362(d)(1) that relief from the stay is appropriate. Thus, the burden has not shifted to the Debtor. *See In re Fitzgerald*, 237 B.R. 252, 259 (Bankr. D. Conn. 1999); *see also* 11 U.S.C. § 362(g). The Creditor's failure to make a *prima facie* case for relief from the stay requires denial of the Motion. *See Del. Trust Co. v. Energy Future Intermediate Holding Co. LLC*, (*In re Energy Future Holdings Corp.*), 533 B.R. 106, 117 (Bankr. D. Del. 2015).

Based on the foregoing,

IT IS ORDERED: the Motion seeking relief from the automatic stay is denied.

Dated: ___March 6, 2026___

*s/ Katherine A. Constantine*
Katherine A. Constantine
Chief United States Bankruptcy Judge